[Civ. No. 15819.   Second Dist., Div. Two.   July 28, 1947.

LESTER BALKINS, Respondent, v. COUNTY OF LOS ANGELES, Appellant.

Harold W. Kennedy, County Counsel, L. K. Voe and Loton Wells, Deputy County Counsels, for Appellant.

Van Lee Hood, Robert E. Austin and John N. Helmick for Respondent.

MOORE, P. J.—From a decree quieting title in respondent this appeal comes to test the soundness of a judgment against the holder of a valid, recorded mortgage on two-thirds interest in the property where such mortgage had not been satisfied, but respondent had based his claim to a decree upon the mortgagee's agreement to accept for a release of its mortgage "50 per cent of the gross receipts from said two-thirds interest in said property," and the mortgagee was tendered only $22.01 instead of $200, the sale having been made for $600.

The evidence shows that prior to February 18, 1932, Mary D. Trowbridge became seized of two-thirds interest in Lot 21, Steele Tract, in the county of Los Angeles as the result of a property settlement with her husband. The lot was improved with a double dwelling house. On that day she mortgaged her interest to appellant and the mortgage was recorded on May 12. During the subsistence of the mortgage Mrs. Trowbridge deceased but her mortgage was renewed by her executor on February 13, 1941, to secure the debt of the estate of decedent in the sum of $911.05 and the new mortgage was recorded March 27, 1941.

At a sale of tax delinquent properties on August 8, 1941, the tax collector of the county sold Lot 21 to Cleon E. Balkins, hereinafter referred to as Cleon, who on September 29, 1941, sued decedent's executor to quiet title to his new possession. That lawsuit is hereinafter referred to as the Cleon action. The executor denied the validity of the tax sale. Subsequently, Lester Balkins and his wife Elva acquired the one-third interest of decedent's erstwhile husband, Charles Trowbridge, in Lot 21, and sued the county and the executor for a partition of the property. Although the county was not served, the trial was set for February 6, 1942, the same day as that fixed for the trial of the Cleon action. But prior to such trial date the executor and the county executed a writing the effect of which was that (1) the county and state had filed a stipulation in the Cleon action for judgment against themselves; (2) the executor has advanced costs and performed legal service in the same cause; (3) in the event a settlement be made with the executor with reference to the estate's interest in Lot 21, 50 per cent of the gross amount of such settlement shall be paid to the county in satisfaction of its mortgage, and (4) in case a trial of the Cleon action should result in a recovery by the estate, then the county "shall receive 50 per cent of the gross receipts from the said two-thirds interest in said property" in satisfaction of its mortgage. Promptly following the execution of the foregoing "agreement" the attorneys for Cleon and Lester were advised of its existence and immediately a settlement of both actions followed.

In the Cleon action it was stipulated that (1) the tax collector sold Lot 21 to Cleon on August 8, 1941, to satisfy delinquent taxes; (2) Cleon in reliance upon the validity of the previous proceedings paid therefor $337.81 and received the tax deed; (3) the total outlay of Cleon at the time for taxes paid and the deed was $406.36; (4) also, he paid the sum of $61.05 for taxes for 1941 and had paid an insurance premium in the sum of $7.50.

In the partition suit it was stipulated that (1) the Trowbridges had effected a property settlement in March, 1930, whereby an undivided two thirds of Lot 21 went to Mary and one third to Charles; (2) deeds were executed to effect such division but the deed to Charles is not of record; (3) that the quitclaim by Charles of his one-third interest to plaintiff Lester is recorded, making the executor and Lester Balkins tenants in common of Lot 21; (4) neither Cleon nor Lester is indebted to the executor, nor is the executor in debt to

either plaintiff; (5) the lot cannot be partitioned "without great prejudice to the owners"; (6) Cleon has a first lien on the lot for $406.36 and (7) the county holds a valid mortgage lien upon the two-thirds interest in the lot.

Pursuant to the stipulations, judgment was entered in the Cleon action declaring the tax deed void and confirming Cleon's lien on Lot 21 for $406.36. In the partition action the interlocutory decree declared that (1) subject to Cleon's lien, the estate of decedent and Lester own Lot 21 as tenants in common, two-thirds and one-third interest respectively; (2) the executor holds no unsatisfied claim against either Lester or Cleon or against Lester's one-third interest; (3) nor is there any unsatisfied claim in favor of either Cleon or Lester against the estate or against its two-thirds interest; (4) that the lot is subject to the lien of Cleon in the principal sum of $406.36 and interest thereon from date of this decree; (5) that subject to said lien the county of Los Angeles holds a mortgage lien of record upon the two-thirds interest of the estate of Mary D. Trowbridge, the amount of which is not determined; (6) the property cannot be partitioned without great prejudice to the owners, rendering a sale necessary. The decree then named a referee "with all the powers necessary to perform all the duties required of him." He was directed to have the lot appraised, to sell it at public auction to the highest bidder for cash upon giving legal notice, to have the sale confirmed, to have a title search made, to procure a certificate of title and to charge the expense thereof as referee's costs which he must pay as well as the lien of Cleon, then to "pay to the plaintiffs one third of the balance of the proceeds of sale after deducting the aforesaid items." After deducting such amounts the referee was directed to pay from the remainder of the proceeds to the county "such amount as may be determined and agreed upon between the said estate and the county of Los Angeles as is necessary to satisfy and discharge the mortgage lien of the County."

Pursuant to the writ in the partition suit the referee sold the property for $600. The court refused to confirm the sale upon the objection of the executor "that the sum bid is disproportionate to the value of said real estate free from said lien." At the same time it was represented that the lot could on a new sale be sold for $1,600. But at the second sale Lester and his wife Elva were the only bidders and again purchased the lot for $600. That sale was confirmed. After deducting the amount of the Cleon lien and the referee's fees and ex-

penses, the referee tendered to the county "two thirds of the net distributable sum" which he held for the account of the estate, to wit, $22.01, upon receipt of the assent of the executor of the estate of Mary D. Trowbridge and a satisfaction of the mortgage. After the county had ignored the referee's tender Lester through his attorney made demand upon the board of supervisors for a release of the mortgage upon the ground that on February 6, 1942, they had agreed with the executor of the Trowbridge estate that out of monies received as the result of settlement or suit the county "shall receive fifty per cent of the gross receipts from the said two-thirds interest in said property in satisfaction of its mortgage." The letter thus addressed to the supervisors reminded them of their knowledge of their agreement with the executor and that such agreement was a consideration for which both Cleon and Lester made the stipulation that the tax deed was ineffective and also that judgment might be entered for a partition by sale of Lot 21.

Thereafter the present action was instituted by Lester to quiet his title to Lot 21. The court found that on September 29, 1941, Cleon had filed suit to quiet his title against the Trowbridge estate; the contract of February 6, 1942, was executed by the executor and the county; the tax deed suit was tried upon "a stipulation of facts entered into September 11, 1942, between Cleon and the executor"; Cleon dismissed the case as against the county and judgment was entered quieting title of the estate against Cleon and his tax deed; the county for a valuable consideration stipulated and agreed to release its mortgage against Lot 21, and said mortgage was and is discharged thereby; when Lester filed his partition suit March 27, 1942, against the executor, he knew of the terms of the contract between the supervisors and the executor of February 6, 1942, and by reason thereof did not serve the county with process; the judgment for partition was entered September 21, 1942, sale to Lester and wife was confirmed and the referee tendered $22.01 to the county for a satisfaction of its mortgage. Upon such findings it was decreed that Lester and his wife were owners of the lot.

The judgment must be reversed because respondent stipulated to take title to the parcel subject to the county's mortgage. After the order confirming the second sale on February 25, 1943, had been entered the executor on March 8, 1943, filed his notice of motion to set aside and vacate the referee's report on the ground that the notice of such sale failed to

include the intelligence that the lot would be sold subject to the county's mortgage. On March 22, the court made its order denying such motion and included in its order that "the plaintiffs Lester Balkins and Elva Balkins having waived in open court any defect in the notice of sale by reason of the fact that it does not mention any lien of the county of Los Angeles upon the property sold, or any part thereof, and waived any and all rights which they may have or hereafter acquire by reason of the failure of said notice to mention such lien" and confirmed the sale to Lester and his wife. Upon an appeal from the order denying the executor's motion to vacate, this court affirmed the order on the ground that the county's lien was not against the entire parcel but attached only to the undivided two-thirds interest of the estate. It would have been improper to order the property sold subject to the county's lien and the interlocutory decree did not so direct, but did order the lot to be sold and that payments on account of the county's lien should come from the estate's share of the net proceeds. (*Balkins* v. *Norrby,* 64 Cal.App.2d 848, 849 [149 P.2d 396].)

That decision did not concern itself with the fact that the county was not a party to the partition suit. In an action for partition where encumbrances are of record at the commencement of the action and the lien holder is not a party to the action, the court must order such person to be made a party or it must appoint a referee to ascertain what amount if any remains unpaid; also, provision is made for such lien holder to make proof before the referee and for his report to be confirmed by the court. (Code Civ. Proc., §§ 761, 762.) A failure to observe such requirements will warrant the reversal of an order confirming such a sale. (*Wernse* v. *Dorsey,* 2 Cal.2d 513, 516 [41 P.2d 935].)

Respondent and his wife having waived all rights which they may have acquired by reason of the failure of the notice to mention the county's mortgage, they thereby acknowledged the paramountcy of appellant's interest and were thereafter in no position to deny it. They made the purchase with no intention other than that their title should be subject to the mortgage. Moreover, if the notice had mentioned the county's lien, respondent would have bought the lot subject to the mortgage against the estate's two-thirds share. This is established by the fact that at the first sale, which was made expressly subject to the ability of the referee to pay the mortgage out of the estate's share, they bid the same amount

which they bid at the second sale. Their intention is further indicated by the facts (1) that the first sale on February 25, 1943, was set aside because the notice of sale did not mention the county's mortgage and (2) that when the second sale came on for confirmation the court required the plaintiffs to waive any rights they might have had prior to the mortgage as a condition of its confirming the sale. Not only had the county never been a party to the partition suit, had never been asked to prove its claim before a referee, but the court had never authorized a sale to be made free of the county's lien. Respondent knew at the time of his purchase that the referee's notice of sale had omitted mention of the county's mortgage. Obviously, because of its awareness that the county was not a party the court made provision in its order of confirmation for the protection of the mortgage.

▇ Because the county was not a party it was prejudicial error to admit in evidence the court file in the partition suit. (*Martin* v. *Lloyd*, 94 Cal. 195, 204 [29 P. 491]; 22 Cal.Jur. 174.) ▇ A judgment or order is operative only upon the parties to the action and their privies. A predecessor in interest is not a privy. (20 Cal.Jur. p. 473, § 2.) ▇ A party as to whom an action has been dismissed is not bound by the judgment subsequently rendered. (15 Cal.Jur., p. 191, § 220; ibid, p. 183, § 215.) Inasmuch as respondent's only evidence against the county was the latter's valid mortgage on the land he made no adequate showing against appellant. He introduced into evidence the files in the two actions of Cleon and Lester, but since the county was dismissed from the former and was never served in the latter they were without efficacy against the county. There was no proof that respondent ever received a deed to the lot or ever paid the $540 balance of the amount of his bid at the referee's sale. Furthermore, although Lester's wife was his partner in the bid made at the referee's sale, she is not a party to the present action and no conveyance of her interest to Lester appears in the record.

▇ But respondent relies for affirmance upon the doctrine of estoppel. He argues that all the parties, "including county counsel" and the attorney for the estate, relied upon the county's agreement with the executor to accept "50 per cent of what the executor could get out of any deal he could make and release its mortgage." There are three answers to such contention. First, the language quoted from respondent's brief is not the contract of the parties which has already been

quoted herein. No attempt is made by respondent to show that the executor ever offered to pay the county "50 per cent of the gross receipts from said two-thirds interest" in the lot. Second, even though the agreement was made with the county, respondent was not a party thereto. While section 1559 of the Civil Code provides that "a contract, made expressly for the benefit of a third person, may be enforced by him . . . ", there is no law whereby one who is incidentally benefited by a contract may enforce it. (*Smith* v. *Anglo California Trust Co.*, 205 Cal. 496, 502 [271 P. 898] ; *Sanders* v. *Crabtree*, 44 Cal.App.2d 602, 608 [112 P.2d 923] ; *Buckley* v. *Gray*, 110 Cal. 339, 345 [42 P. 900, 52 Am.St.Rep. 88, 31 L.R.A. 862].) The agreement of February 6, 1942, upon which respondent asserts that he relied to estop the county was made with reference to the Cleon action. The partition suit was not filed until March 27, 1942. Therefore, respondent could not have been in the contemplation of the board of supervisors when the Cleon contract was executed by them. Third, not only did it have no reference to Lester and therefore cannot avail him as a basis for estoppel, but it was never enforcible by the executor for the reason that he never paid the amount promised the county out of the proceeds of a sale. The mere fact of the existence of the February contract as discovered by respondent's counsel during the pendency of the partition action is not of such efficacy as would serve to estop the county.

The county had a valid mortgage on Lot 21 for a substantial sum. Respondent sued the executor from whom he had acquired a deed of an undivided one-third interest in the parcel and his own son Cleon who held a tax deed to the entire lot for a partition thereof. Having obtained a judgment for partition by sale of the property without having served the county with process, respondent has proceeded upon a unique course of attempting by this action to erase the county's mortgage because he relied upon an agreement to which he was not a party and concerning which he made no reference in his complaint. To do so would be an injustice which equity abhors and will not countenance.

The judgment is reversed with instructions to enter judgment for appellant.

McComb, J., and Wilson, J., concurred.