Filed 9/16/16  LouBar, LLC v. U.S. Bank CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| LOUBAR, LLC,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>U.S. BANK, N.A., as Trustee, etc.,<br><br>    Defendant and Respondent. | H040422<br>(Santa Clara County<br> Super. Ct. No. 1-11-CV-211815) |

Plaintiff LouBar, LLC filed suit against defendant U.S. Bank[1] and six non-bank defendants to challenge the validity of allegedly "sham" ground leases and related leasehold liens encumbering property that LouBar acquired after a court-supervised sale in 2010.  The auction resolved a lawsuit that LouBar's predecessors in interest Louis P. Barbaccia (Lou), his sister Josephine Pecoraro, and their niece Catherine Pecoraro (collectively, LouBar's predecessors) filed in 2008 to partition their and other family members' undivided fractional interests in a 20-acre property that is part of a larger 56-acre mobile home park in San Jose.  The auction proceeded pursuant to a stipulated court order establishing the terms and conditions of the sale.  LouBar's predecessors were the successful bidders.  They purchased the 20-acre property "as a unit" and "subject to all

---

[1]     U.S. Bank is the successor in interest to German American Capital Corporation. We refer to both entities collectively as "the Bank."

leases, easements and other exceptions affecting the Property referenced on the Title Report, and all encumbrances of record."

LouBar filed this action in 2011. The Bank demurred and moved for judgment on the pleadings on the ground that LouBar's predecessors' failure to challenge the allegedly sham leases and the Bank's deed of trust in the 2008 partition action precluded LouBar from proceeding against the Bank in this action. The trial court agreed, concluding that "under the applicable statutes [governing partition actions in California], . . . LouBar now is barred from contesting [the Bank's] deed of trust in this litigation."

LouBar appeals from the ensuing judgment.[2] It contends that the trial court (1) failed to comply with Code of Civil Procedure section 472d,[3] (2) misinterpreted the partition statutes, (3) erred in ruling that the Bank was an "indispensable" party to the 2008 partition action (§ 389), (4) erred in concluding that res judicata barred LouBar's claims, (5) erred to the extent it concluded that the "subject to" condition in the terms of sale to which it stipulated "[f]orever" ratified the validity of the 2007 leases, (6) erred in failing to realize that LouBar's predecessors lacked standing to challenge the 2007 leases or the Bank's deed of trust in the 2008 partition action, and (7) abused its discretion in denying leave to amend. We affirm.

## I. Background

Since this appeal comes to us after the sustaining of a demurrer and the granting of a motion for judgment on the pleadings (collectively, the demurrer ruling), we take the facts from the operative complaint, its exhibits, and matters judicially noticed. (*American*

---

[2] In its opening brief, LouBar states that it also challenges the trial court's denial of its motion for a new trial. Its briefs contain no discussion or argument on the subject. We deem any issues with respect to the new trial motion abandoned. (*Ellenberger v. Espinosa* (1994) 30 Cal.App.4th 943, 948.)

[3] Subsequent statutory references are to the Code of Civil Procedure unless otherwise noted.

*Airlines, Inc. v. County of San Mateo* (1996) 12 Cal.4th 1110, 1118; *Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 885 (*Stevenson*); *Dodd v. Citizens Bank of Costa Mesa* (1990) 222 Cal.App.3d 1624, 1627 (*Dodd*).)  We accept these facts as true for the limited purpose of determining whether the complaint states a viable cause of action. (*Stevenson*, at p. 885.)

LouBar owns 20 acres of a 56-acre property that has been operated as the Magic Sands Mobile Home Park since the 1960's.  LouBar acquired its present interest in 2010, but the relevant facts reach further back in time.

Lou and Cyril G. (Cy) Barbaccia are brothers.  In 1960, their parents purchased the original 20 acres.  The parents took title to an undivided 50 percent interest and Cy "as managing partner in a partnership with, *inter alia*, [Lou]" took title to the other undivided 50 percent interest.  The brothers developed the original 20 acres into the Magic Sands Mobile Home Park.  In 1967, they leased their undivided 50 percent interest in the original 20 acres to their management entity, Magic Sands Mobile Community (Community).

In 1971, the City of San Jose condemned a portion of the original 20 acres for a road-widening project.  It contemporaneously abandoned a contiguous piece of land formerly used for road purposes, and that land was added to the mobile home park.  The partnership's 1967 lease to Community was modified to reflect the changes.  We will refer to the 20-acre property as it existed after the 1971 changes as the "Current 20 Acres."  The partnership purchased additional acres over the years, and the mobile home park expanded to its present 56 acres (the Current Mobile Home Park).

In the early 1980's, the brothers created Barbaccia Properties, LP and quitclaimed their respective interests in the Current Mobile Home Park to their limited partnership. The limited partnership then leased its undivided 50 percent interest in the Current 20 Acres to Community.  In 1992, the limited partnership entered into a "new lease" of its undivided 50 percent interest in the Current 20 Acres and its additional interests in the

3

mobile home park with Community.  The 1992 lease was terminated in February 2007 in connection with the dissolution and winding up of the limited partnership.

The limited partnership's assets (including the Current Mobile Home Park) were sold at auction in late 2006.  Defendants GBR San Jose MHP, LLC (GBR San Jose) and Barbaccia Properties Holdings, LLC (BPH) ultimately took title to the former limited partnership's 50 percent undivided interest in the Current 20 Acres.  Before escrow closed however, LouBar's predecessors (who had inherited fractional portions of the other 50 percent undivided interest in the Current 20 Acres) filed suit to partition the property and recorded a lis pendens.  They dismissed that action without prejudice a few weeks later and withdrew the lis pendens at the request of BPH and GBR San Jose to permit those entities to obtain the $38.5 million in financing that they needed to close escrow on their purchase of the Current Mobile Home Park.

In March 2007, BPH as lessor and its wholly-owned subsidiary Barbaccia Magic Sands (BMS) as lessee entered into a ground lease of BPH's undivided one-half interest in the former limited partnership's undivided 50 percent interest in the Current 20 Acres. GBR San Jose as lessor and its wholly-owned subsidiary GBR Magic Sands (GBRMS) as lessee entered into "an identical" ground lease of GBR San Jose's undivided one-half interest in the former limited partnership's undivided 50 percent interest in the Current 20 Acres.  The "twin purported ground leases" (the 2007 leases) were "shams" created as "an artifice . . . against which [nearly $40 million in] financing would be . . . secured." The Bank and the parties to the 2007 leases "understood that, upon the close of escrow, the likelihood was high that the partition action would be re-filed."  They "required an artifice . . . apart from an explicit deed of trust against the fee . . . interest . . . since a partition action of the same fee interest would compromise the security and/or trigger a default in the loan."

The $38.5 million in financing was ultimately secured from the Bank.  In return, GBRMS and BMS executed a $38.5 million deed of trust giving the Bank a security

4

interest in (among other things) certain fee and leasehold interests in the Current Mobile Home Park, including the 2007 leases.

On March 17, 2008, LouBar's predecessors filed a new action to partition the Current 20 Acres. Their operative first amended complaint for partition of real property did not name the Bank as a defendant or challenge the validity of the 2007 leases or the Bank's security interest in those leases.

In October 2010, the parties to the 2008 partition action stipulated to the entry of an order establishing the procedure for sale of the Current 20 Acres pursuant to the referee's report and recommendation. The stipulated order provided among other things that "[a]ll bidders and the Buyer shall have completed all due diligence before a bid is submitted." It further provided that the property would be sold "as a unit" and "as is-where is" to the highest bidder, that "[t]he sale and purchase of the Property shall be subject to all leases, easements and other exceptions affecting the Property referenced on the Title Report and all encumbrances of record," and that "[a]ll exceptions will remain on title at the close of escrow." The title report specifically identified the Bank's security as follows: "A Deed of Trust to secure an original indebtedness of $38,500,000.00 recorded April 4, 2007 as Instrument No. 19368654 of Official Records. [¶] Dated: March 23, 2007. [¶] Trustor: [GBRMS] and [BMS]. [¶] Trustee: First American Title Insurance Company. [¶] Beneficiary: [the Bank]. [¶] Affects: The land and other property. [¶] This Deed of Trust affects both fee and leasehold interests."

The Current 20 Acres were sold at auction on November 4, 2010. LouBar's predecessors were the successful bidders. The overbid form that they submitted stated that "[b]y signing below, Bidder acknowledges receipt and acceptance of the Terms of Sale and the Exhibits thereto . . . ." The overbid form reaffirmed that "[t]he Property will be sold as a unit, 'as-is,' and subject to all exceptions shown on the Title Report and all encumbrances of record." The referee's order confirming the sale directed the parties to

5

the 2008 partition action to execute "any and all documents" to complete the sale "in compliance with the Terms of Sale . . . ."

A year later, LouBar filed this action against the Bank, BPH, BMS, GBR San Jose, GBRMS, MHP Roll-Up,[4] and its wholly-owned subsidiary MHP, LLC.  The gravamen of the complaint was that the 2007 leases were invalid "shams" because among other things (1) "the purported lessor did not hold any present possessory interest" in the Current 20 Acres; (2) "the purported lessee . . . did not come into existence until *after* the lease[s'] execution"; (3) the leases set the rent at "a tiny fraction of the fair market rent"; and (4) the leases include purchase options that allow the lessees to purchase the lessors' fee simple interests "at the end of the purported lease term for NOTHING."  The complaint prayed for declaratory and ancillary relief, cancellation of the 2007 leases and the Bank's leasehold liens, damages, and quiet title.  In 2013, LouBar filed an amendment alleging additional causes of action against GBRMS and the Bank for declaratory relief, unjust enrichment and restitution, and quiet title.  The gravamen of those causes of action was that to the extent the 2007 leases were enforceable, they did not encumber any designated plot of land on which a mobile home sat because "all interest in the possessory estate" of the plots "belonged solely and exclusively to the . . . tenants" of the mobile home park.

The Bank demurred and moved for judgment on the pleadings on the ground that LouBar's predecessors' failure to identify their claims against the Bank and join it as a defendant in the 2008 partition action precluded LouBar from proceeding against the Bank in this action.  The trial court agreed, ruling that "under the applicable statutes [governing partition actions in California], . . . LouBar now is barred from contesting [the

---

[4]  "[B]y grant deed and related transfers and assignments" in December 2008, defendant MHP Roll-Up became the lessor and GBRMS became the lessee under both of the 2007 leases.

6

Bank's] deed of trust in this action." LouBar filed a timely notice of appeal from the ensuing judgment.


## II.  Discussion

### A.  Section 472d

Preliminarily, we address LouBar's contention that the trial court failed to comply with section 472d, which requires an order sustaining a demurrer to include "a statement of the specific ground or grounds upon which the decision . . . is based . . . ." LouBar forfeited this argument by failing to raise it below. (§ 472d; *Cohen v. Superior Court* (1966) 244 Cal.App.2d 650, 654-655.)

The contention lacks merit in any event. "[S]ection 472d does not mandate a detailed statement explaining the court's reasons . . . ." (*Mautner v. Peralta* (1989) 215 Cal.App.3d 796, 801 (*Mautner*).) In *Mautner*, the court held that an order stating that it " 'appear[ed] from the points and authorities filed herein that the . . . complaint does not state facts sufficient to constitute a cause of action' " and that the defendant's demurrer was therefore sustained without leave to amend satisfied section 472d. (*Ibid.*) The order here was much more specific. It cited particular provisions of the statutory framework governing partition actions in California and explained that LouBar's primary argument was contrary to that framework. It noted LouBar's stipulation to an order decreeing that the Current 20 Acres would be sold subject to the recorded encumbrances LouBar now seeks to challenge and that all exceptions would remain on title at the close of escrow. It also noted LouBar's failure to explain how further amendment would remedy the deficiencies in its complaint as amended. LouBar's section 472d challenge lacks merit.


### B.  The Demurrer Ruling:  Standard of Review

" 'A motion for judgment on the pleadings, like a general demurrer, tests the allegations of the complaint . . . .' " (*Angelucci v. Century Supper Club* (2007) 41 Cal.4th

7

160, 166.) "'Because the trial court's determination is made as a matter of law, we review the ruling de novo'" under the same rules that apply to demurrers. (*Ibid*.; *Gill v. Curtis Pub. Co.* (1952) 38 Cal.2d 273, 275.) We accept as true "'all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.]'" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*).) "[F]acts appearing in exhibits attached to the complaint will also be accepted as true and, if contrary to the allegations in the pleading, will be given precedence." (*Dodd*, *supra*, 222 Cal.App.3d at p. 1627.) "'We also consider matters which may be judicially noticed.' [Citation.]" (*Blank*, at p. 318.) Such matters include "the dates, parties, and legally operative language" in recorded documents and the legal effect of such documents. (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 264-266, disapproved on another ground in *Yvanova v. New Century Mortgage. Corp.* (2016) 62 Cal.4th 919, 939, fn. 13.) "[W]e give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Blank*, at p. 318.) "'Specific factual allegations modify and limit inconsistent general statements.'" (*Alfaro v. Community Housing Improvement System & Planning Assn., Inc.* (2009) 171 Cal.App.4th 1356, 1371.) We will affirm the trial court's ruling "if there is any ground on which [it] can properly be sustained, whether or not the trial court relied on proper grounds or the defendant asserted a proper ground in the trial court proceedings." (*Martin v. Bridgeport Community Assn., Inc.* (2009) 173 Cal.App.4th 1024, 1031; *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 (*Aubry*).) On appeal, "'the plaintiff bears the burden of demonstrating that the trial court erred.' [Citation.]" (*Zipperer v. County of Santa Clara* (2005) 133 Cal.App.4th 1013, 1020.)

When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility

8

is squarely on the plaintiff." (*Blank*, *supra*, 39 Cal.3d at p. 318.) "Plaintiff must show in what manner he can amend his complaint and how that amendment will change the legal effect of the pleading." (*Cooper v. Leslie Salt Co.* (1969) 70 Cal.2d 627, 636.) The showing need not be made in the trial court so long as it is made to the reviewing court. (*Dey v. Continental Central Credit* (2008) 170 Cal.App.4th 721, 731; § 472c.)

### C. The Statutory Framework Governing Partition Actions in California

Partition is "'the procedure for segregating and terminating common interests in the same parcel of property.'" (14859 *Moorpark Homeowner's Assn. v. VRT Corp.* (1998) 63 Cal.App.4th 1396, 1404-1405.) With certain exceptions not relevant here, such actions are governed by sections 872.010 et seq. (§ 872.020.) "[A]lthough the action of partition is of statutory origin in this state, it is nonetheless an equitable proceeding [citations] . . . ." (*Elbert, Ltd. v. Federated etc. Properties* (1953) 120 Cal.App.2d 194, 200; see § 872.140.) "The policy behind a partition action is to permanently end all disputes about property and to remove all obstructions to its free enjoyment." (*LEG Investments v. Boxler* (2010) 183 Cal.App.4th 484, 497 (*LEG Investments*); accord, *McGillivray v. Evans* (1864) 27 Cal. 92, 96-98.) To that end, "[t]he interests of the parties, plaintiff as well as defendant, may be put in issue, tried, and determined in the action." (§ 872.610.) "'[A] court of equity, having once acquired jurisdiction, will adjust all the differences between the parties arising from the cause of action in order to do complete justice and prevent further litigation . . . .'" (*Bacon v. Wahrhaftig* (1950) 97 Cal.App.2d 599, 604.) A plaintiff in a partition action is "entitled to have his rights, as well as those of defendants having interests in the property, put in issue, tried and determined. No partition can be had until the interests of all the parties have been ascertained and settled by a trial." (*Id.* at p. 603.)

The statutory framework mandates that the complaint set forth a description of the "property" that is the subject of the action, all "interests" that the plaintiff has or claims in

that property, all interests of record or actually known to the plaintiff that others have or claim in the "property," and the "estate" as to which partition is sought. (§ 872.230.) The answer must set forth any interest that the defendant has or claims in the "property" and "[a]ny facts" tending to controvert allegations of the complaint that the defendant does not wish to be taken as true. (§ 872.410.) "The plaintiff shall join as defendants . . . all persons having or claiming interests . . . in the estate as to which partition is sought." (§ 872.510.)

The judgment in a partition action "is binding and conclusive on . . . [¶] . . . [a]ll persons known and unknown who were parties to the action and who have or claim any interest in the property, whether present or future, vested or contingent, legal or beneficial, several or undivided." (§ 874.210.) But "the judgment does not affect a claim in the property or part thereof of any person who was not a party to the action if . . . [¶] . . . [t]he claim was of record at the time the lis pendens was filed or . . . [¶] . . . actually known to the plaintiff . . . ." (§ 874.225, subds. (a), (b).)

### D. Section 872.540

LouBar contends that it did not need to name the Bank as a defendant in the 2008 partition action because "the legislature expressly excluded mere lessees . . . as necessary parties" to such actions. Relying on section 872.540, LouBar reasons that if the statute did not require joinder of the lessees under the 2007 leases, "then logic would mandate the same rule for a mere leasehold lienor." LouBar's logic rests on a faulty premise.

Section 872.540 provides that "[w]here property is subject to a lease . . . *with respect to oil or gas or both*, the plaintiff need not join as defendants persons whose only interest in the property is that of a lessee . . . and the judgment shall not affect the interests of such persons not joined as defendants." (§ 872.540, italics added.) Section 872.540 states an exception to the joinder requirements of section 872.510, and "exceptions in a statute are to be strictly construed . . . ." (*National City v. Fritz* (1949)

10

33 Cal.2d 635, 636.)  "In interpreting exceptions to a general statute courts include only those circumstances which are within the words and reason of the exception." (*Barnes v. Chamberlain* (1983) 147 Cal.App.3d 762, 767.)  The rule is fatal to LouBar's argument because section 872.540 is expressly limited to oil and gas leases.  The 2007 leases that LouBar challenges in this action are not oil or gas leases.  Had the Legislature intended the exception to apply to all leases, we presume that it would have said so. (*Regency Outdoor Advertising, Inc. v. City of Los Angeles* (2006) 39 Cal.4th 507, 529-530.) Because section 872.540 does not except the lessees under the 2007 leases, it cannot be read to except a leasehold lienor like the Bank "by extension."  LouBar's reliance on section 872.540 is misplaced.

### E.  Sections 872.510 and 389

LouBar contends that it was not required to join the Bank in the 2008 partition action because it sought partition of "the estate constituting the fee title to the Property" only.  It relies on section 872.510, which states that "[t]he plaintiff shall join as defendants in the action all persons having or claiming interests of record or actually known to the plaintiff or reasonably apparent from an inspection of the property, in the estate as to which partition is sought." (§ 872.510.)  LouBar argues that the statute "expressly limits mandatory joinder to parties holding an interest '*in the estate to which partition is sought*,'" and the Bank holds no such interest. (Boldface omitted.)  The contention requires us to determine what the Legislature meant by "interests, . . . in the estate as to which partition is sought." (§ 872.510.)

"'[T]he objective of statutory interpretation is to ascertain and effectuate legislative intent.' [Citation.]  To discover that intent we first look to the words of the statute, giving them their usual and ordinary meaning. [Citations.]  'Where the words of the statute are clear, we may not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history.' [Citation.]" (*Trope v.*

11

*Katz* (1995) 11 Cal.4th 274, 280.) "But the 'plain meaning' rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose . . . ." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 (*Lungren*).)

When attempting to ascertain the usual and ordinary meanings of words, courts appropriately refer to dictionary definitions. (*Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1121-1122.) However, "[t]he meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible." (*Lungren*, *supra*, 45 Cal.3d at p. 735.) "A construction making some words surplusage is to be avoided." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387.) "[E]ach sentence must be read . . . in the light of the statutory scheme [citation]; and if a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed [citation]." (*Lungren*, at p. 735.)

The partition statutes do not define "estate." (§ 872.010.) LouBar appears to ascribe the same meaning to "estate" as it does to "interest" when it uses the terms "fee interest" and "fee estate" interchangeably in its briefing. We cannot agree with that approach, because it violates the canon of statutory interpretation that requires us to avoid constructions making some words surplusage and to instead give significance " '[i]f possible, . . . to every word . . . in pursuance of the legislative purpose.' " (*Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230.)

The meaning of "estate" is narrower than the meaning of "interest." (*Darr v. Lone Star Industries, Inc.* (1979) 94 Cal.App.3d 895, 901.) "An interest in land is not presumptively an estate in land:  the term estate is confined to those interests which are or may become *possessory*." (*Ibid*.) "The word 'estate' . . . means an interest in land which (a) is or may become possessory; and (b) is ownership measured in terms of duration." (Rest., Property (1936) § 9.) Civil Code section 761 explains that "[e]states in real property, in respect to the duration of their enjoyment, are either:  [¶] . . . [e]states of

12

inheritance or perpetual estates; [¶] . . . [e]states for life; [¶] . . . [e]states for years; or [¶] . . . [e]states at will." (Civ. Code, § 761.) "[A] tenant in common who holds his interest in fee has 'an estate of inheritance' . . . ." (*Gunn v. Gunn* (1929) 102 Cal.App. 606, 607.) Here, "the *estate* as to which partition [was] sought" in 2008 was an estate of inheritance, specifically, the Current 20 Acres, which were owned at the time in undivided fractional interests by Lou, Josephine, Catherine, Cy and his wife, BPH, and GBR San Jose. (§ 872.510, italics added.)

The parties do not try to define "interest." The partition statutes do not define the word either, although the comments to section 872.510 note that "'interest' includes liens." (Assem. Legis. Com. com., 17A West's Ann. Code Civ. Proc. (2015 ed.) foll. § 872.510, p. 185; Cal. Law Revision Com. com., 17A West's Ann. Code Civ. Proc. (2015 ed.) foll. § 872.410, p. 182.) The Oxford English Dictionary defines "interest" as "[t]he fact or relation of being legally concerned; legal concern *in* a thing; esp. right or title to property, or to some of the uses or benefits pertaining to property." (Oxford English Dict. (2nd ed. vol. VII 1989) p. 1099.) Black's similarly defines "interest" as "[a] legal share in something; all or part of a legal or equitable claim to or right in property < right, title, and interest >." (Black's Law Dict. (10th ed. 2009) p. 934.) Other dictionary definitions are in accord. (E.g., Merriam-Webster's Collegiate Dict. (10th ed.1999) p. 610 ["right, title, or legal share in something"]; Am. Heritage College Dict. (3d ed. 1997) p. 708 ["A right, claim, or legal share"].)

Applying these definitions, we conclude that the usual and ordinary meaning of an "interest" in estate property is not restricted to an ownership interest. A leaseholder, for example, has an "interest" in leased estate property because a lease confers a right to occupy that property during the lease term. (*Yee Chuck v. Board of Trustees* (1960) 179 Cal.App.2d 405, 410.) A lienholder also has an "interest" in property because the lienholder has a right to enforce the lien by levy of execution and sale of the property that the lien encumbers. Here, the lessees under the 2007 leases had interests "in the estate as

13

to which partition [was] sought." (§ 872.510.) LouBar's predecessors implicitly acknowledged as much in 2008, when they named BMS and GBRMS as defendants in the 2008 partition action.

The Bank's leasehold liens, however, are a step removed from "the estate as to which partition [was] sought." (§ 872.510.) Those liens do not encumber the land. Instead, they encumber MHP Roll-Up's interests in the 2007 leases. Thus, it is unclear from section 872.510 alone whether the statutory framework for partition actions required the Bank's joinder in the 2008 partition action.

The Assembly Legislative Committee anticipated such situations. The committee's comments to section 872.510 state that "[i]t should be noted that 'interest' includes liens and that joinder of additional parties may be necessary under Section 389 (mandatory joinder)." (Assem. Legis. Com. com., 17A West's Ann. Code Civ. Proc. (2015 ed.) foll. § 872.510, p. 185.) Section 389 provides in pertinent part that "[a] person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if . . . (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest . . . ." (§ 389, subd. (a)(2)(i).)

Here, the trial court could properly have concluded that section 389, subdivision (a)(2)(i) required the Bank's joinder in the 2008 partition action. Although LouBar's predecessors did not identify the 2007 leases in their 2008 complaint (as section 872.230 required them to do), defendant MHP Roll-Up's answer put those leases and the Bank's leasehold liens at issue by praying that any partition of the property be made subject to the existing encumbrances of record, including the 2007 leases and the Bank's deed of trust. Consonant with the policy of achieving finality and a conclusive end to disputes about property and removing obstructions to its free enjoyment, the partition statutes authorized the trial court in the 2008 partition action to decide all issues related to the

14

2007 leases and the Bank's liens. (§ 872.610.) Adjudicating such issues in the Bank's absence would "as a practical matter" have "impair[ed] or impede[d]" the Bank's ability to protect its security interest. (§ 389, subd. (a)(2)(i).) LouBar belatedly acknowledges the point when it states that "[u]nquestionably, if the 2007 Ground Leases are canceled or declared void, the collateral to [the Bank's] leasehold deed of trust would be lost, and thus most certainly 'impaired.'" If LouBar's predecessors had challenges to the 2007 leases and the Bank's lien, they should have named the Bank as a defendant in the 2008 partition action and raised those challenges then.

LouBar faults the trial court in this action for concluding that the Bank was an unnamed "indispensable" party to the 2008 partition action. LouBar misreads the trial court's order, which made no mention of section 389, "indispensable" persons, or their joinder. Although the trial court could properly have determined that section 389 required the Bank's joinder in the 2008 action, the court did not need to do so, because the parties agreed upon terms of sale that protected the lessees' and the Bank's interests. The parties to the 2008 partition action stipulated in writing to the entry of an order that included those agreed-upon terms of sale. The stipulated order provided among other things that the Current 20 Acres would be sold "subject to all leases, easements and other exceptions affecting the Property referenced on the Title Report, and all encumbrances of record" and that "[a]ll exceptions will remain on title at the close of escrow." It is undisputed that the 2007 leases and the Bank's deed of trust were "referenced on the Title Report." The partition sale proceeded according to the "Order Approving Referee's Recommendation Concerning Type of Sale and Manner, Terms and Conditions of Sale of Real Property" to which the parties stipulated. The winning overbid form that LouBar's predecessors submitted at the 2010 auction reaffirmed that "[t]he Property will be sold as a unit, 'as-is,' and subject to all exceptions shown on the Title Report and all encumbrances of record." The "Order Confirming Sale of Real Property" in accordance with the stipulated terms was entered on November 15, 2010.

15

The partition statutes state that "[t]he judgment in [a partition] action is binding and conclusive on . . . [¶] . . . [a]ll persons known and unknown who were parties to the action and who have or claim any interest in the property, whether present or future, vested or contingent, legal or beneficial, several or undivided." (§ 874.210.) The statutes also state that "the judgment does not affect a claim in the property or part thereof of any person who was not a party to the action if . . . [¶] . . . [t]he claim was of record at the time the lis pendens was filed or . . . [¶] . . . actually known to the plaintiff . . . ." (§ 874.225, subds. (a-b).) Thus, LouBar is bound by the judgment in the 2008 partition action. (§ 874.210, subd. (a).) The Bank is not bound. (§ 874.225.) The trial court properly so ruled.

### F. Res Judicata

LouBar contends that the trial court erred in concluding "that the doctrine of *res judicata* [*sic*] bars this action." LouBar again misreads the trial court's order, which made no mention of res judicata. The order was instead expressly based on the statutory scheme governing partition actions, the policy underlying such actions, and the order to which the parties stipulated.

The trial court did not need to rely on common law principles of res judicata. Nor do we. (*Morenhout v. Higuera* (1867) 32 Cal. 289, 295 (*Morenhout*).) In *Morenhout*, the court found it "unnecessary to notice the argument of counsel for the plaintiffs as to the force and effect of a former judgment between the same parties and their privies at common law." (*Ibid.*) The court explained that "[t]o do so, in the presence of the plain and positive provisions of the statute by which the whole matter is regulated, which require no reference to the common law for the purposes of interpretation, would be to go aside and discuss principles which have no direct application to the case. The force and effect of a final judgment in an action for partition is clearly and explicitly stated in the statute . . . ." (*Ibid.*)

16

So too here.  The partition statutes expressly provide that "[t]he judgment in a partition action is binding and conclusive on . . . [¶] . . . [a]ll persons known and unknown who were parties to the action and who have or claim any interest in the property, whether present or future, vested or contingent, legal or beneficial, several or undivided."  (§ 874.210.)  Under the statutory framework governing partition actions, LouBar is bound by the judgment in the 2008 partition action, which incorporated the terms of sale to which its predecessors stipulated.

LouBar insists, however, that because the trial court's order quoted one sentence from *LEG Investments* and another from *Amin v. Khazindar* (2003) 112 Cal.App.4th 582 (*Amin*), the court necessarily "concluded that the principles of *res judicata* [*sic*] espoused in [those cases] 'barred LouBar from contesting [the Bank's] deed of trust in this litigation.'"  The contention lacks merit.

*LEG Investments* says nothing about res judicata.  The trial court cited *LEG Investments* for the proposition that " '[t]he policy behind a partition action is to achieve finality and a conclusive end to disputes about the property and to remove obstructions to free enjoyment of the property.' "  The trial court also quoted the *Amin* court's statement that " ' "[a] party cannot by negligence or design withhold issues and litigate them in successive actions." ' "  (*Amin*, *supra*, 112 Cal.App.4th at p. 590.)  The fact that the court quoted a sentence from *Amin* does not mean that the court relied on principles of res judicata.

We would affirm even if the court relied on principles of res judicata.  "[A] reviewing court reviews the judgment rather than the reasons for the judgment and must affirm the judgment if any of the grounds stated in the demurrer is well taken."  (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 111; *Aubry*, *supra*, 2 Cal.4th at p. 967.)  As we have determined, the trial court properly concluded that

17

"under applicable statutes [governing partition actions in California], . . . LouBar now is barred from contesting [the Bank's] deed of trust in this litigation."[5]

## G. Standing

LouBar challenges the trial court's ruling that its predecessors should have contested the 2007 leases and the Bank's deed of trust in the 2008 partition action. LouBar contends that its predecessors lacked standing to do so because they were "strangers" to those instruments before they acquired the Current 20 Acres at the 2010 auction. We disagree.

"'"[S]tanding to sue . . . is the right to relief in court."' [Citation.]" (*People ex rel. Depart. of Conservation v. El Dorado County* (2005) 36 Cal.4th 971, 988.) Standing in a partition action is conferred by statute. Section 872.210 provides that "[a] partition action may be commenced and maintained by . . . [¶] . . . [¶] . . . [a]n owner of an estate of inheritance, and estate for life, or an estate for years in real property where such property or estate therein is owned by several persons concurrently or in successive estates." (§ 872.210, subd. (a)(2).) As owners of estates of inheritance, LouBar's predecessors thus had standing to commence and maintain the 2008 partition action. (*Ibid.*) The issue is whether the broad statutory grant of standing encompassed their present challenge to the 2007 leases and the Bank's liens. We conclude that it did.

The permissible scope of a partition action is broad, in keeping with the statute's underlying policy to permanently end all disputes about the property and to remove all

---

[5]  Because we conclude that common law principles of res judicata are not implicated here, we need not address LouBar's assertion that *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813 (*DKN*) supports its position. We find the case inapposite in any event. *DKN* clarifies the "bedrock principle of contract law" that "[p]arties who are jointly and severally liable on an obligation may be sued in separate actions." (*Id.* at p. 818.) The instant action is not a contract case, nor does it involve joint and several liability. LouBar's reliance on *DKN* is misplaced.

18

obstructions to its free enjoyment.  (§ 872.610; see *LEG Investments*, *supra*, 183 Cal.App.4th at p. 497.)  " 'In a suit for partition . . . it is a general rule that all equities and conflicting claims existing between the parties and arising out of their relation to the property to be partitioned may be adjusted [citations].' "  (*Demetris v. Demetris* (1954) 125 Cal.App.2d 440, 444-445; § 872.610.)  Indeed, the statutory framework requires the parties to identify in their pleadings all interests that they have or claim not merely in the estate being partitioned but "in the property," as well as all interests of record or actually known that others have or claim "in the property."  (§§ 872.230, subds. (b), (c), 872.410, subd. (a).)  LouBar's summary dismissal of this mandate as a "mere pleading requirement" ignores the role of the pleadings in tendering the issues in a partition action.  As the *Morenhout* court explained, "[a]n action for partition . . . is, to some extent, *sui generis.*  The parties named in the complaint . . . are all actors, each representing his own interest.  Whether plaintiffs or defendants, they are required to set forth fully and particularly the origin, nature and extent of their respective interests in the property.  [Citation.]  This having been done, the interest of each, or all, may be put in issue by the others."  (*Morenhout*, *supra*, 32 Cal. at p. 295; see also *Tu Junga Co. v. Barclay* (1909) 11 Cal.App. 60, 61 [where answer that alleged ownership interest not only in the land to be partitioned but also in its associated riparian rights was not served on any party other than the plaintiff, "it was not error for the court to find . . . that the subject matter of the . . . answer was not involved in the issues of the action."].)

Here, defendants put the 2007 leases and the Bank's deed of trust at issue by praying in their answer that the property be sold subject to the existing encumbrances of record.  The answer expressly identified the 2007 leases and the Bank's deed of trust.  It would be anomalous to hold that the defendants in a partition action could raise these issues but that LouBar's predecessors lacked standing to respond to them or to raise related issues.  We reject LouBar's contention that its predecessors lacked standing to

19

raise their challenges to the 2007 leases and the Bank's leasehold liens in the 2008 partition action.

The cases on which LouBar relies do not compel a contrary conclusion. None of those cases arose in the context of a partition action. To the extent that they address standing at all, none does so in the context of a partition action. "Obviously, cases are not authority for propositions not considered therein." (*Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 372 (*Roberts*).)

LouBar cites *Tompkins v. Superior Court* (1963) 59 Cal.2d 65 (*Tompkins*) and *Swartzbaugh v. Sampson* (1936) 11 Cal.App.2d 451 (*Swartzbaugh*) for the proposition that where one cotenant leases his interest in jointly-owned property to a third party, the other tenants in common cannot cancel the lease or recover exclusive possession of the entire property. (*Tompkins*, at p. 69; *Swartzbaugh*, at p. 461; see also *Verdier v. Verdier* (1957) 152 Cal.App.2d 348, 352 ["A cotenant has no right to oust a person who holds possession with the consent of another tenant in common."].) Those cases suggest that LouBar's predecessors would have lost on the merits had they challenged the 2007 leases and the Bank's deed of trust in the 2008 partition action. They do not suggest that LouBar's predecessors lacked standing to do so.

LouBar cites *Reed v. Hayward* (1943) 23 Cal.2d 336, 340, *Rowley v. Davis* (1917) 34 Cal.App. 184, and *Moakley v. Los Angeles Pacific Ry. Co.* (1934) 139 Cal.App. 421 for the proposition that as a general rule, a plaintiff in a quiet title action must have title at the commencement of his action. Those cases do not help LouBar because its predecessors held title to undivided fee interests in the Current 20 Acres at all relevant times and therefore had standing under section 872.210, subd. (a)(1).

LouBar quotes *Reina v. Erassarret* (1949) 90 Cal.App.2d 418 (*Reina*) for the general rule that "a party to the contract or a privy thereto, and he alone, is entitled to maintain a suit to cancel or rescind it." (*Id.* at pp. 423-424.) *Reina* does not support LouBar's position because the *Reina* court did not apply that general rule. (*Roberts*,

20

*supra*, 5 Cal.4th at p. 372.)  The *Reina* court held instead that "relief by way of cancellation of an instrument is not necessarily confined to a party to the instrument" if a nonparty's legal or equitable rights are affected by it.  (*Reina*, at p. 424.)  The court concluded that the plaintiff surviving joint tenant "was not a stranger to" the subject matter of his action to set aside his deceased wife's conveyance of her undivided one-half interest in real property and to quiet title where he alleged that the conveyance had been procured by fraud and undue influence.  Instead, he "had such an interest in the whole" of the real property that he could maintain the action.  (*Id.* at pp. 423-424)  So too here.  In advancing its "strangers" argument, LouBar overlooks the fact that its predecessors' interests in the Current 20 Acres were undivided.  Because the owners' interests were undivided, any leasehold interests they chose to convey were similarly undivided.  The lessees under the 2007 leases therefore enjoyed the right to occupy, use, and possess not merely some defined portion of the Current 20 Acres but the entirety of the property.  The lessors, the lessees, and LouBar's predecessors were concurrent interest holders in the property, not strangers.  *Reina* undermines rather than supports LouBar's position.  We reject LouBar's contention that its predecessors lacked standing to challenge the 2007 leases and the Bank's deed of trust in the 2008 partition action.

### H.  "Subject To"

LouBar contends that the trial court erred "to the extent" it concluded that the "subject to . . . all encumbrances of record" condition in the terms of sale to which LouBar stipulated "forever" ratified the validity of the 2007 leases.  (Capitalization omitted.)  LouBar argues that the purpose of that language was merely to put the auction participants on notice of the existence of such leases and exceptions and encumbrances of record "so as to negate a non-disclosure claim down the road."  We disagree.

LouBar's characterization of the "subject to" language as a mere disclosure requirement misperceives the import of the stipulation its predecessors signed.  They

21

stipulated to the entry of a court order that established the terms and conditions of the partition sale. The order to which they stipulated unambiguously stated that "[a]ll exceptions will remain on title at the close of escrow . . . . The sale and purchase of the Property shall be subject to all leases, easements and other exceptions affecting the Property referenced on the Title Report, and all encumbrances of record." The stipulated order was subsequently incorporated into the order confirming the partition sale. LouBar cannot now collaterally attack those orders. Nor could it have done so directly. " 'It is an elementary and fundamental rule of appellate procedure that a judgment or order will not be disturbed on an appeal prosecuted by a party who consented to it. [Citations.]' A stipulation is a consent within the meaning of this rule. [Citations.]" (*Brooms v. Brooms* (1957) 151 Cal.App.2d 351, 352.)

LouBar claims the trial court "erroneously conflated the prior court's efforts to provide 'notice' . . . with the unrelated doctrine of waiver." It criticizes the trial court's reliance on the "completely inapposite" decision in *Balkins v. County of Los Angeles* (1947) 81 Cal.App.2d 42 (*Balkins*). We find the case on point.

*Balkins* was a quiet title action. Prior to bringing that suit, Balkins sued to partition property that he owned as a tenant in common with the executor of a prior owner's estate. The County of Los Angeles held a recorded mortgage encumbering the executor's interest in the property. Balkins named the county as a defendant in the partition action but never served the county with the summons and complaint. (*Balkins*, *supra*, 81 Cal.App.2d at p. 44.)

Meanwhile, Balkins's son Cleon brought a separate quiet title action against the executor, alleging his purchase of the entire property from the county tax collector at a delinquent tax sale. (*Balkins*, *supra*, 81 Cal.App.2d at p. 44.) Before trial, the executor and the county allegedly agreed that if Cleon's case settled, the county would accept 50 percent of the settlement in satisfaction of its mortgage, and if the case went to trial and the executor prevailed, the county would accept 50 percent of the gross receipts from the

22

estate's two-thirds interest in the property. Cleon's quiet title action settled. The judgment declared his tax deed void and confirmed his lien for $406.36 against the property. (*Balkins*, *supra*, 81 Cal.App.2d at p. 45.)

Balkins then settled his partition action. The interlocutory decree declared that Balkins and the executor owned the property as tenants in common and that the property should be sold subject to Cleon's $406.36 lien and the county's mortgage. (*Balkins*, *supra*, 81 Cal.App.2d at p. 45.) The decree named a referee who subsequently sold the property to Balkins for $600. (*Ibid.*) The court confirmed the sale. (*Ibid.*) The referee satisfied Cleon's lien from the proceeds of the sale, deducted his own fees and expenses, and tendered two-thirds of the net distributable sum to the county in satisfaction of the mortgage. (*Id.* at p. 46.) The county refused to accept it. (*Ibid.*)

Balkins then filed the instant action to quiet title against the county. The trial court quieted title in Balkins. (*Balkins*, *supra*, 81 Cal.App.2d at p. 46.) The Court of Appeal reversed "because [Balkins] stipulated to take title to the parcel subject to the county's mortgage." (*Ibid.*) "[H]aving waived all rights which [Balkins] may have acquired by reason of the failure of the notice to mention the county's mortgage, [he] thereby acknowledged the paramountcy of [the county's] interest . . . . [He] made the purchase with no intention other than that [his] title should be subject to the mortgage." (*Id.* at p. 47.) The court noted that "[n]ot only had the county never been a party to the partition suit, had never been asked to prove its claim before a referee, but the court had never authorized a sale to be made free of the county's lien." (*Id.* at p. 48.) Balkins "knew at the time of his purchase that the referee's notice of sale had omitted mention of the county's mortgage. Obviously, because of its awareness that the county was not a party, the court made provision in its order of confirmation for the protection of the mortgage." (*Ibid.*)

The same reasoning applies here. LouBar's predecessors knew at the time of their purchase that the property was encumbered by the 2007 leases and that the Bank had a

23

lien on those leases.  Indeed, their winning bid acknowledged their agreement to take title subject to all encumbrances of record.  Here as in *Balkins*, the trial court made provision in the stipulated orders to protect those recorded interests, as the partition statutes expressly authorized it to do.  (§ 873.610, subd. (a) ["The court may, at the time of trial or thereafter, prescribe such manner, terms, and conditions of sale not inconsistent with the provisions of this chapter as it deems proper for the particular property or sale"], § 873.600 ["Notwithstanding any other provision of this title, the court shall order sale by such methods and upon such terms as are expressly agreed to in writing by all the parties to the action"].)  Having intentionally or negligently failed to challenge the 2007 leases and the Bank's leasehold liens at issue in the 2008 partition action, and having expressly stipulated to take title to the property subject to those encumbrances, LouBar cannot now challenge them.  Any such challenge has been waived.

LouBar argues that nothing in the terms of sale "makes mention of giving up any right whatsoever."  We reject the argument, which in essence pleads a failure to understand the statutory framework for partition actions in California and ignorance of the import of the stipulation.  The judgment in a partition action is binding on all parties to the action.  (§ 874.210, subd. (a).)  "[T]he judgment does not affect a claim in the property or part thereof of any person who was not a party to the action if . . . [¶] . . . [t]he claim was of record at the time the lis pendens was filed or . . . [¶] . . . actually known to the plaintiff . . . ."  (§ 874.225, subds. (a-b).)  "The policy behind a partition action is to permanently end all disputes about property and to remove all obstructions to its free enjoyment."  (*LEG Investments*, *supra*, 183 Cal.App.4th at p. 497.)  We emphasize that if LouBar's predecessors wanted to carve out a right to challenge the 2007 leases and the Bank's lien in a later action, they knew exactly how to do so.  In the related *Pecoraro* action, they expressly reserved their right to bring a later action challenging a different lease.  (*Pecoraro v. Barbaccia, et al.* (Santa Clara County Superior Court Case No. 1-10-CV-18662.)

24

LouBar argues that until its predecessors "actually won the auction and, for the first time, stepped into the shoes of the 2007 Ground Lease lessor, *a prior* agreement to the Terms of Sale was not a waiver of a 'present right' and therefore not a waiver at all as a matter of law." This is simply another iteration of LouBar's argument that its predecessors lacked standing to challenge the 2007 leases before they won the auction. We have already rejected that argument.

LouBar argues that waiver must be established by clear and convincing evidence "and should therefore not be resolved at the pleading stage." In our view, a written stipulation to entry of an order, given by parties who were at all times represented by counsel, satisfies the clear and convincing standard. This is particularly so where the winning bid that LouBar's predecessors submitted expressly "acknowledge[d] receipt and acceptance of the Terms of Sale and Exhibits thereto . . . ." The trial court did not err when it ruled that LouBar was barred "[u]nder [the] applicable statutes . . . from contesting [the Bank's] deed of trust in this litigation."

## I.  Leave to Amend

LouBar contends that the trial court abused its discretion in denying leave to amend. It maintains that it can amend its complaint to allege that the Bank had actual notice of the 2008 partition action yet failed to intervene. LouBar's theory is that the Bank's failure to do so "constitute[d] a waiver of its arguments that it should have been so joined." Loubar relies on the rule that while waiver generally refers to the voluntary relinquishment of a known right, "it can also mean the loss of an opportunity or a right as a result of a party's failure to perform an act it is required to perform, regardless of the party's intent to abandon or relinquish the right." (*Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 315.) The Bank responds that the rule has no application here because the Bank had no duty to intervene. We agree with the Bank.

25

The California Supreme Court has twice rejected the argument that LouBar advances. (*Holt Mfg. Co. v. Collins* (1908) 154 Cal. 265, 274 (*Holt*); *Motores de Mexicali, S.A. v. Superior Court* (1958) 51 Cal.2d 172, 176 (*Motores*). In *Holt*, the owner of threshing equipment sued the county sheriff to recover possession of it. The sheriff had seized the equipment from the Hubbards (who were operating it as farmers) after a default judgment was entered against them and the equipment ordered sold to enforce labor liens in favor of their workers. (*Holt*, at p. 267.) The judgment was against the Hubbards only, the Holt Manufacturing Company (Holt) having earlier been dismissed as a defendant in the prior action. (*Ibid.*)

The plaintiffs in the prior action against the Hubbards intervened in Holt's lawsuit against the sheriff and joined in asking that the equipment be sold to satisfy the prior judgment. (*Holt*, *supra*, 154 Cal. 265 at p. 268.) Holt's demurrer to the intervenors' complaint was overruled, the intervenors' demurrer to Holt's answer was sustained, and the trial proceeded. The trial court entered judgment foreclosing the liens. (*Id.* at pp. 268-269.) The California Supreme Court reversed, holding that Holt was entitled to its day in court and that its interest in the equipment could not be affected by a proceeding to which it was not a party. (*Id.* at p. 270.) The court rejected the argument that Holt had actual notice of the prior proceeding and was obligated to intervene to protect its interests. "Where a defendant is dismissed from an action before judgment, the effect of the dismissal is the same as if he had never been made a party. [Citation.] We can conceive of no reason why the fact that [Holt] had actual notice of the proceeding against the Hubbards required it to intervene or be bound by any judgment against the Hubbards. Such is not the law." (*Holt*, at p. 274.)

In *Motores*, the California Supreme Court refused to amend an already-final default judgment against a bankrupt company to add its three principals, whom the plaintiffs belatedly alleged were the company's alter egos. The court held that to do so would constitute a denial of due process. (*Motores*, *supra*, 51 Cal.2d at pp. 175-176.)

26

The court added that the constitutional difficulty was not "overcome by the suggestion that [the three] should have intervened in the action brought solely against [their company] . . . . They were under no duty to appear and defend personally in that action, since no claim had been made against them personally." (*Id.* at p. 176.)

The high court's reasoning applies here. LouBar's predecessors did not name the Bank as a defendant in the 2008 partition action. Their complaint did not in any way challenge the validity of the 2007 leases or the Bank's security interest in those leases. At no point in the 2008 partition action did LouBar's predecessors challenge the leases or the Bank's leasehold liens. Whether the Bank had actual notice of the lawsuit is irrelevant. It had no duty to intervene in a lawsuit to which it was not a party. (*Holt*, *supra*, 154 Cal. 265 at p. 274, *Motores*, *supra*, 51 Cal.2d at p. 176.)

LouBar's reliance on dictum in *Palpar, Inc. v. Thayer* (1947) 82 Cal.App.2d 578 (*Palpar*) is misplaced. *Palpar* was a suit for partition of a tractor in which the plaintiff claimed an undivided one-half interest and the defendant and a plaintiff in intervention (one Miller) each claimed sole ownership. Miller's interest was purely derivative of the defendant's title. (*Id.* at p. 581.) The trial court entered judgment for Miller and ordered the tractor sold in foreclosure. The Court of Appeal reversed, holding that when an appeal is on a judgment roll, findings that contradict admissions in the pleadings must be disregarded and findings outside the issues cannot support the judgment. (*Id.* at pp. 583-584.)

At the end of the decision, the court noted that "[t]he right of Miller to intervene in the partition suit is questioned by the appellant." (*Palpar*, *supra*, 82 Cal.App.2d at p. 584.) The court then stated that it was "not only the right . . . but the duty" of Miller to intervene. (*Ibid.*) But because Miller in fact intervened in *Palpar*, the court had no reason to consider whether he had any obligation to do so. Thus, the language that LouBar relies on is dictum. As such, it offers no support for the legal theory that LouBar claimed it could advance in an amended complaint. (*Palmer v. GTE California Inc.*

27

(2003) 30 Cal.4th 1265, 1278 ["'"Language used in any opinion is of course to be understood in the light of the facts and the issue then before the court, and an opinion is not authority for a proposition not therein considered."'"].) LouBar has not called our attention to any other authority supporting that legal theory, and we have found none. "'Leave to amend should be denied where the facts are not in dispute, and the nature of the plaintiff's claim is clear, but, under the substantive law, no liability exists.' [Citations.]" (*Kilgore v. Younger* (1982) 30 Cal.3d 770, 781.) We conclude that the trial court did not abuse its discretion in denying LouBar leave to amend.

### III.  Disposition

The judgment is affirmed.  The parties shall bear their own costs on appeal.

_____
Mihara, J.

WE CONCUR:


_____
Elia, Acting P. J.



_____
Bamattre-Manoukian, J.